Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAYS INNS WORLDWIDE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>KAMLA ENTERPRISES, INC., *et al.*,<br><br>Defendants. | Civil Action No. 18-8013 (ES) (JAD)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Days Inns Worldwide, Inc. ("DIW") filed a motion for default judgment against Kamla Enterprises, Inc. ("Kamla"), Bipin Patel, and Praful Patel (the "Patels") (collectively, "Defendants"). (D.E. No. 12). The Court has considered DIW's submissions and decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons stated below, the Court GRANTS DIW's motion for default judgment.

**I.     Background**

DIW brings this action against Defendants for their alleged breaches of a contract. (*See* D.E. No. 1 ("Compl.")). Particularly, on August 23, 2013, DIW and Kamla entered into the franchise agreement that permitted Kamla to operate a Days Inn guest lodging franchise at 1901 SW 13th Street, Gainesville, Florida for a period of 15 years (the "Franchise Agreement"). (*Id.* ¶¶ 9–10 & Ex. A).

Pursuant to the Franchise Agreement, Kamla agreed to make periodic payments to DIW for royalties, system assessments, taxes, interests, reservation system user fees, and other fees (collectively, the "Recurring Fees"). (*Id.* ¶ 11 & Ex. A. §§ 7, 18.4 & Sched. C). In order to

calculate the Recurring Fees, Kamla also agreed to prepare and submit monthly reports to DIW disclosing, among other things, the amount of gross room revenue earned by Kamla in the preceding month. (*Id.* ¶ 13 & Ex. A § 3.6). Kamla also agreed to maintain accurate financial information and to allow DIW to examine these financial records. (*Id.* ¶ 14 & Ex. A §§ 3.6 & 4.8). Moreover, Kamla agreed that interest is payable "on any past due amount payable to [DIW] under the [Franchise] Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid." (*Id.* ¶ 12). Finally, Section 17 of the Franchise Agreement contains a forum selection clause and consent to venue in the District of New Jersey. (*Id.*, Ex. A at 21–22).

The Patels, as owners and principals of Kamla, signed the Franchise Agreement on Kamla's behalf. (*See id.* ¶¶ 3–4 & Ex. A at 26). Additionally, the Patels provided DIW with a guaranty (the "Guaranty") of Kamla's obligations under the Franchise Agreement, including the provisions discussed above. (*Id.* ¶ 16 & Ex. B). Relevant here, the Patels agreed to be personally bound to "immediately make each payment and perform or cause [Kamla] to perform, each unpaid or unperformed obligation of [Kamla] under the [Franchise] Agreement," as well as to pay the costs incurred by DIW in enforcing its rights and remedies under the Guaranty or the Franchise Agreement. (*Id.* ¶¶ 17 & 18).

On April 6, 2017, DIW sent a letter to Kamla advising the corporation it owed $78,683.98 in Recurring Fees. (*Id.* ¶ 20). DIW sent similar letters on May 15, 2017; August 10, 2017; November 9, 2017; and February 8, 2018. (*Id*. ¶¶ 21–24). Each of these letters reflected the amount due in unpaid Recurring Fees, advised Kamla that it was in breach of the Franchise Agreement, gave Kamla ten days to pay the money owed, and cautioned Kamla that the Franchise Agreement may be terminated if the debts were not cured. (*Id.*). In total, the Complaint alleges

that Kamla owed $111,350.61 in unpaid fees. (*Id.* ¶ 25).[1]

On April 18, 2018, DIW initiated this action asserting that Kamla has failed to pay numerous Recurring Fees. (*See id.*). On June 5, 2018, DIW successfully served the Patels with the Summons and Complaint by leaving copies with Hemang Patel, the Patels' relative and co-resident, at their place of residence. (*See* D.E. No. 5).

DIW also employed RECON Management Group, LLC ("RECON") to effectuate personal service upon Kamla. (D.E. No. 6 ¶ 3). On June 19, 2018, Cynthia R. Lee, a RECON employee, provided DIW with an affidavit detailing RECON's unsuccessful efforts to serve Kamla. (*See id.*, Ex. A). Particularly, RECON determined that D. MMR Ravel is Kamla's registered agent. (*Id.*, Ex. A ¶ 3). On June 5, 2018, RECON's process server served a copy of the Summons and Complaint on Hemang Patel in his capacity as the desk manager at Kamla's principal place of business. (*Id.*, Ex. A ¶ 7). RECON informed the server that this service was not proper, and directed the server to make proper service personally upon D. MMR Ravel. (*Id.*). On June 7, 2018, the process server again attempted to properly serve Kamla. (*Id.*, Ex. A ¶ 8). The process server spoke to Hemang Patel, who informed the server that D. MMR Ravel did not work at that location, but that D. MMR Ravel was aware of the lawsuit. (*Id.*). The next day, June 8, 2018, the process server again attempted to personally serve Kamla's registered agent. (*Id.*, Ex. A ¶ 9). Again, the server was informed by manager Jay Patel that D. MMR Ravel was not present. (*Id.*). Jay Patel also informed the server that D. MMR Ravel does not come to that location and no one is aware of his actual address. (*Id.*). The server left a copy of the Summons and Complaint with Jay Patel. (*Id.*). In her affidavit, Cynthia R. Lee states that RECON has "no additional alternative

---

[1] After DIW initiated this action, Defendants made two payments decreasing the total amount due to 59,294.30. (D.E. No. 12-5 ¶ 21 & n.1). However, Defendants have failed to address the remaining outstanding balance. (*Id.*).

location information for Kamla . . . after diligent inquiry and attempts;" that she believes D. MMR Ravel is in fact at Kamla's address; and that Kamla and D. MMR Ravel are aware of this lawsuit. (*Id.*, Ex. A ¶ 11). Thereafter, DIW's counsel served Kamla via ordinary and certified mail, return receipt requested. (*Id.* ¶ 5 & Ex. B).

Despite being served, Defendants failed to respond to the Complaint. On July 13, 2018, DIW filed a request for entry of default against Defendants. (D.E. No. 7). The Clerk entered the requested default on July 16, 2018. DIW then filed the instant motion for default judgment. (*See* D.E. No. 12). To date, Defendants have not filed an answer or otherwise responded to the Complaint, and have failed to appear before the Court.

## II. Legal Standard

Federal Rule of Civil Procedure 55 permits a district court to enter default judgment against a party who fails to plead or otherwise respond to the action filed against him. Fed. R. Civ. P. 55(b)(2). To initiate the process for default judgment, the plaintiff must request entry of default by the Clerk of the Court. *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006). Following entry of default judgment, the plaintiff must file a motion for default judgment requesting relief from the district court. *Id.*

The district court has wide discretion to determine whether an entry of default judgment is appropriate. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). "Before entering default judgment the court must: (1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct.

30, 2015). The propriety of entering default judgment also depends on the Court's "explicit factual findings as to: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds,* 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

In deciding these issues, "the factual allegations of the complaint, except those as to the amount of damages, will be taken as true." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). The Court must determine the amount of damages when the amount the plaintiff requests is not a sum certain or a sum that can be made certain by computation of facts present in the record. *See* Fed. R. Civ. P. 55(b). "The district court has considerable latitude in determining the amount of damages. The court is not required to conduct a hearing 'as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." *Cornwell Quality Tools Co. v. Blanco*, No. 16-5086, 2018 WL 2441750, at *2 (D.N.J. May 31, 2018) (quoting *Super 8 Worldwide, Inc. v. Urmita, Inc.*, No. 10-5354, 2011 WL 2909316, at *2 (D.N.J. July 18, 2011)). "It is familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." *Malik v. Hannah*, 661 F. Supp. 2d 485, 493 (D.N.J. 2009) (quoting *Pope v. United States*, 323 U.S. 1, 12 (1944)).

### III. Discussion

*Subject-matter jurisdiction*. District courts have original subject-matter jurisdiction in civil actions when the parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). A corporation is deemed to be a citizen of the state in which it

is incorporated and the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1). For individuals, "[c]itizenship is synonymous with domicile, and 'the domicile of an individual is his true, fixed and permanent home and place of habitation.'" *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006) (quoting *Vlandis v. Kline*, 412 U.S. 441, 454 (1973)).

In the instant case, DIW is a corporation incorporated in the state of Delaware with its principal place of business in New Jersey. (Compl. ¶ 1). Defendants are citizens of the state of Florida, since Kamla is incorporated under Florida law with a principal place of business in Florida, and the Patels are domiciled in Florida. (*Id.* ¶¶ 2–4). Thus, the Court finds that the diversity of citizenship requirement is satisfied.

The amount in controversy is determined by the amount pled in the complaint, unless it is legally certain that the plaintiff cannot recover that amount. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938). "In making this determination, '[t]he temporal focus of the court's evaluation . . . is on the time that the complaint was filed.'" *Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016) (alterations in original) (quoting *Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997)). Thus, "[e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." *St. Paul Mercury Indem. Co.*, 303 U.S. at 289–90.

Here, DIW pled $111,350.61 in damages resulting from unmet Franchise Agreement obligations, well above the required $75,000. (*See* Compl. ¶ 32). DIW calculated this amount by relying on the gross revenue information that Kamla provided and estimated gross room revenue to the extent that Kamla did not report its finances. (*Id.* ¶ 28). Although Defendants have since made two payments reducing the asserted debt to $59,294.30, this post-filing reduction in the amount in controversy does "not oust jurisdiction." *See St. Paul Mercury Indem. Co.*, 303 U.S. at

289. Consequently, the Court finds that it has subject-matter jurisdiction over this matter.

***Personal jurisdiction and venue.*** "The United States Supreme Court has held that a contractual consent to personal jurisdiction should be enforced unless it would be unreasonable or unjust to do so." *Knights Franchise Sys., Inc. v. Patel*, No. 16-1707, 2017 WL 5191805, at *3 (D.N.J. Nov. 9, 2017) (quoting *Park Inn Int'l, LLC v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 373 (D.N.J. 2000)). In *Knights Franchise*, the district court found the parties' contractual consent "to the non-exclusive personal jurisdiction of and venue in . . . the United States District Court for the District of New Jersey" constituted a valid consent to personal jurisdiction and venue in New Jersey. *Id.*

Here, the Franchise Agreement specifically states that Kamla gave consent and waived objection "to the non-excusive personal jurisdiction of and venue in . . . the United States District Court for the District of New Jersey for all cases and controversies under [the Franchise Agreement]." (Compl., Ex. A. § 17.6.3). Similarly, the Patels consented to personal jurisdiction and venue through the Guaranty, in which they agreed to be personally bound by Section 17 of the Franchise Agreement. (*Id.*, Ex. B). Like the court in *Knights Franchise*, this Court "sees no reason why this freely agreed-upon consent to personal jurisdiction in New Jersey should not be enforced. Therefore, the Court has personal jurisdiction over Defendants." *See Knights Franchise*, 2017 WL 5191805, at *3.

***Service of process.*** "Before the Court can enter default judgment, it must find that process was properly served on the Defendant." *Id.* at *4 (citing *Teamsters Pension Fund v. American Helper, Inc.*, No. 11-0624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011)).

Here, the Defendants were properly served. First, to serve an individual, Federal Rule of Civil Procedure 4 allows service by "leaving a copy of the summons and complaint at the

individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(B). On June 5, 2018, DIW served the Patels by leaving a copy of the Summons and Complaint at their household with 45-year-old Hemang Patel, a relative and co-resident of the Patels. (D.E. No. 5 at 2 (CM/ECF Pagination)). This process comports with Rule 4. Therefore, the Court finds that the individual Defendants were properly served.

Second, to serve a corporation, Federal Rule of Civil Procedure 4 requires service either personally on a competent individual by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made," or "by delivering a copy of the summons and the complaint to an officer, a managing or general agent, or any other agent appointed or by law to receive service of process and . . . by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h). According to New Jersey law, if a corporation cannot be served after "a diligent effort and inquiry," service can be made by "mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and simultaneously by ordinary mail" to the corporations' "registered agent for service, or to its principal place of business, or to its registered office." N.J. Ct. R. 4:4-4(b)(C); *see also Trustees of the N.J. B.A.C. Health Fund v. Everest Masonry Constructors Inc.*, No. 15-7703, 2017 WL 385036, at *2 (D.N.J. Jan. 26, 2017).

Here, DIW hired RECON to serve Kamla. (D.E. No. 6 ¶ 3). RECON's process server went to Kamla's place of business on June 5, 7, and 8, 2018, and attempted to personally serve Kamla or its registered agent, D. MMR Ravel. (*Id.*, Ex. A ¶¶ 7–9). The process server inquired with building employees, who told the process server that D. MMR Ravel was not present and that no one knew the location of D. MMR Ravel. (*Id.*). RECON representatives also conducted research to discover alternative locations to serve Kamla. (*See id.*, Ex. A ¶ 3). Despite these

diligent efforts and inquiry, the process server was unable to personally serve Kamla. (*Id.*, Ex. A ¶¶ 10 & 11). Thereafter, on June 21, 2018, DIW served Kamla via ordinary and certified mail, return receipt requested, pursuant to N.J. Ct. R. 4:4-4(b)(C). (*Id.* ¶ 5 & Ex. B). Coupled with the fact that the Patels, Kamla's principals, were aware of this action because they were personally served, this process satisfies the service requirements of the Federal Rules of Civil Procedure and the laws of New Jersey. Therefore, the Court finds that Kamla was properly served. *See, e.g.*, *Everest Masonry Constructors Inc.*, 2017 WL 385036, at *2 ("Plaintiffs complied with New Jersey law; they filed a declaration explaining their diligent efforts to effect personal service, then appropriately mailed a copy of the summons and complaint to Everest's principal place of business and registered agent.").

Consequently, the Court is satisfied that it has jurisdiction over this action and over the Defendants, and may thus decide the pending motion.

***Sufficiency of the allegations.*** DIW seeks default judgment on its breach of contract claim. (D.E. No. 12-3 at 4). In a breach of contract claim, the plaintiff must show that three elements are met: (i) the parties entered into a valid contract; (ii) the defendant breached the contract; and (iii) the plaintiff suffered damages caused by the breach. *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007).

DIW alleges that the Franchise Agreement is a valid contract between DIW and Kamla, and that the Guaranty is a valid contract between DIW and the Patels, obliging Defendants to pay the Recurring Fees in question. (*See* Compl. ¶¶ 9–18). DIW further alleges that Defendants have breached their obligations under the contracts by, among other things, failing to pay the required Recurring Fees. (*Id.* ¶¶ 19–25, 32–33, 36–37 & 40–41). Lastly, DIW alleges that it suffered damages as a result of the breach because Defendants did not pay the required Recurring Fees.

(Compl. ¶¶ 25 & 28). Thus, taking these factual allegations as true, as this Court must do, DIW has sufficiently stated a claim upon which relief may be granted. *See Comdyne*, 908 F.2d at 1149.

***Appropriateness of default judgment.*** The Court must next determine whether entry of default judgment is proper. *See Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012). This inquiry requires the Court to "make explicit factual findings as to: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default." *Doug Brady, Inc.*, 250 F.R.D. at 177 (quoting *Sambrick*, 834 F.2d at 74).

Each of these elements is satisfied based on the present record. First, the Court finds that based upon the facts alleged by the Complaint, and in the absence of any responsive pleadings, Defendants do not have any meritorious defense for their failure to meet their contractual obligations. *See, e.g.*, *Moroccanoil, Inc.*, 2015 WL 6673839, at *2. Second, the Court finds that DIW will suffer prejudice in the absence of default judgment, as DIW has no other means for relief. *See, e.g., id.* Finally, Defendants failure to respond or otherwise appear before the Court, despite being served with the Summons and the Complaint, leads the Court to presume that Defendants are culpable. *See, e.g., Teamsters Pension Fund*, 2011 WL 4729023, at *4; *see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 523 (3d Cir. 2006) (holding that a court can find culpability where a defendant fails to respond to communications). Under these circumstances, the Court finds default judgment is proper.

***Monetary damages.*** Unlike the factual allegations of the Complaint that are assumed to be true for the purpose of proving liability, the plaintiff must prove the amount of damages. *See Comdyne*, 908 F.2d at 1149.

DIW requests that the Court enter default judgment against Defendants for the amount still owed in Recurring Fees, calculated at $59,294.30 as of January 7, 2019. (D.E. No. 12-3 at 5; D.E. No. 12-5 ¶ 21 & Ex. K). These Recurring Fees were calculated according to the formulas set forth in Section 7, Section 18.4, and Schedule C of the Franchise Agreement. (D.E. No. 12-3 at 5; Compl., Ex. A). DIW supports the damage amount through a sworn affidavit of DIW's Senior Director of Contracts Compliance and an itemized statement. (D.E. No. 12-5, Ex. K). Although some of the accruals in the statement are marked with an asterisk indicating they are estimates (*see, e.g.*, D.E. No. 12-5, Ex. E at 7), the Court recognizes that DIW's inability to provide a more accurate accounting is the result of Defendants' failure to comply with their contractual obligation to "allow [DIW] to examine, audit, and make copies of ASE's financial information" (*see* Compl. ¶¶ 27–28 & Ex. A §§ 3.6 & 4.8).

After considering the estimated amounts in light of the obligations laid out in Section 7, Section 18.4, and Schedule C of the Franchise Agreement, and the amounts reported with certainty in the itemized statements, the Court finds the total requested amount of $ 59,294.30 to be reasonable and appropriate. (*See* Compl., Ex. A; *see also* D.E. No. 12-5, Ex. K); *see, e.g.*, *Ramada Worldwide Inc. v. ERS Invs., Inc.*, No. 07-1095, 2008 WL 163640, at *8 (D.N.J. Jan. 16, 2008) ("In the absence of better evidence to prove lost royalties, Ramada calculations for infringement damages based on the average recurring fees incurred by ERS on its reported gross room revenue are acceptable."). Therefore, the Court awards DIW the requested relief of $59,294.30.

IV.     **Conclusion**

For the foregoing reasons, the Court GRANTS DIW's motion for default judgment. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**